UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID BANKS,

        Plaintiff,

v.

JAMES FLOYD,

        Defendant.

No. 18-cv-12084-DLC

**ORDER ON DEFENDANT'S MOTION TO**
**RECONSIDER ORDER ON SUMMARY JUDGMENT**

CABELL, U.S.M.J.

Defendant Plainville Police Detective James Floyd moves for reconsideration of the court's decision denying his motion for summary judgment on Count II of the complaint, which alleges a violation of the Massachusetts Civil Rights Act (MCRA), and Count III, which alleges intentional infliction of emotional distress (IIED).[1]  (D. 45).  The plaintiff opposes.  (D. 46).  For the reasons explained below, the motion for reconsideration is denied.

**BACKGROUND**

Summarizing the salient facts, the case arises from an altercation Banks witnessed outside his home involving three area police officers, two of whom were Plainville police officers.  When

---

[1] The court allowed the motion for summary judgment with respect to Count I, which alleged a § 1983 violation against Detective Floyd and the town of Plainville in connection with the search of the plaintiff's residence. Counts II and III are asserted against Detective Floyd only.

news stories about the altercation appeared, Banks discussed the altercation with a municipal employee.  Among other things, he indicated that he had a surveillance camera that might or might not have captured the altercation and suggested that the actual altercation happened differently than as described in news accounts.

The employee told the police chief about the camera and Detective Floyd in turn called Banks the same day to ask if the camera had recorded any of the altercation.  When Banks said he did not want to become involved, Detective Floyd went to Banks' home and observed a camera in the front window, pointing at the area where the altercation had occurred.

Based on this and other information, Detective Floyd obtained and executed a warrant to search Banks' home for video or photographic evidence of the altercation.  During the search, officers found a handgun in a closed dresser in Banks' bedroom. Banks said the handgun, which was inoperable, was an antique that had belonged to his ex-wife.  Among other things, Detective Floyd told Banks that he was prohibited from obtaining a license to carry a firearm in light of his record, and also told him he potentially could be held liable for any crime connected to the handgun.

Banks, who ultimately was never charged with an offense in connection with the firearm, contends that Detective Floyd let the

threat of a possible prosecution hang over him to force him to cooperate in the ongoing investigation of the altercation.

### THE SUMMARY JUDGMENT MOTION

In moving for summary judgment, Detective Floyd focused solely on the propriety of his conduct in obtaining and executing the warrant to search the plaintiff's residence.

With respect to the § 1983 claim in Count I he argued that he was entitled to qualified immunity because there was probable cause for the warrant to issue.  (D. 32).

With respect to the MCRA claim in Count II, he argued that it failed for the same reasons as Count I, and because nothing about the search suggested it was intended to coerce the plaintiff to give up some civil right, or that the defendant interfered with the plaintiff's rights by threats, intimidation, or coercion. (*Id.*).

With respect to Count III the defendant argued that his conduct fell far short of the extreme and outrageous conduct necessary to constitute IIED where he had probable cause to obtain a search warrant.  (*Id.*).

As such, the defendant did not address the propriety of his post-search conduct or the allegations that he improperly used the threat of an improbable prosecution to persuade the plaintiff to provide evidence in connection with the ongoing police investigation.

By contrast, the plaintiff's opposition, to which the defendant submitted no reply, reflects that Counts II and III clearly encompassed the allegation that Detective Floyd's post-search conduct violated the MCRA and constituted IIED. Regarding Count II, the plaintiff argued that the defendant "used the fruits of the unlawful search as a means to threaten Plaintiff, coerce a statement from him regarding the events of July 30 and coerce him into relinquishing his constitutional rights." Regarding Count III, the plaintiff similarly argued that the defendant "exploited the fruits of this unlawful search for the purpose of acquiring a statement from Plaintiff (because Plaintiff was originally reluctant to cooperate in the investigation . . .)." (D. 40).

## THE SUMMARY JUDGMENT ORDER

In granting summary judgment on Count I, the court found that officers did not violate the plaintiff's constitutional rights because they had probable cause to search his residence. The court therefore did not find it necessary to address whether Detective Floyd enjoyed qualified immunity assuming a violation had occurred.

Regarding Count II, the court found for the same reasons that Detective Floyd was entitled to summary judgment to the extent the MCRA claim was based on the search of the plaintiff's residence. However, the court found that Count II survived summary judgment to the extent it alleged a MCRA violation based on Detective

Floyd's use of a potential firearms violation to threaten, intimidate, or coerce Banks into cooperating with the altercation investigation.  The court found that a factfinder reasonably could conclude from the facts that Detective Floyd had used the prospect of a prosecution to coerce or intimidate Banks into cooperating with his investigation.

Regarding Count III, the court denied the motion for summary judgment where the plaintiff asserted that Detective Floyd held the threat of charges open principally to force him to cooperate. The court found that such allegations, if proven, could support a finding of extreme and outrageous conduct.

## **DISCUSSION**

The granting of a motion for reconsideration is "an extraordinary remedy which should be used sparingly[,]" *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006), and is "'appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'"  *Karter v. Pleasant View Gardens, Inc.*, 323 F. Supp. 3d 179, 181 (D. Mass. 2018) (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)).  While a court has considerable discretion to grant or deny the motion, it "will not consider any argument already rejected, *or any theory that could—*

5

and should—have been raised earlier."  *Id.* (emphasis added). Applying that standard here, reconsideration is not warranted.

Detective Floyd argues that the court committed errors of law in denying summary judgment on Counts II and III.  Regarding the MCRA claim, he contends that the court failed to consider whether he enjoyed qualified immunity for his post-search conduct. Regarding the IIED claim, he argues similarly that he cannot be liable for IIED for conduct following the search because he at all times had probable cause to charge the plaintiff for unlawful firearms possession.

However, and as noted above, the defendant did not previously make any arguments at summary judgment addressing the reasonableness of his post-search conduct.  Rather, he argued that he did not violate the MCRA because there was probable cause to search the plaintiff's residence, and because the facts showed no threats, coercion, or intimidation in connection with that search. By contrast, the defendant never argued that his actions following the search were also justified or that he enjoyed qualified immunity with respect to them.  Similarly, although the defendant argued that his conduct in connection with the search fell far short of the extreme and outrageous conduct necessary to constitute IIED, he never argued that his post-search conduct also fell short of meeting that standard.

Nothing prevented the defendant from raising these arguments prior to the court's judgment.  To the extent the defendant might contend it was initially unclear whether the plaintiff's complaint encompassed events following the search, the plaintiff underscored the point in his opposition and the defendant could have sought leave to reply.  Where he did not do so then, he is effectively precluded from doing so now.  *See Iverson v. City of Boston*, 452 F.3d 94, 104 (1st Cir. 2006) (motion for reconsideration does not "allow a party [to] advance arguments that could and should have been presented to the district court prior to judgment"); *see also Bangura v. Shulkin*, Civ. A. No. 16-10614-JGD, 2019 WL 163111, at *1 (D. Mass. Jan. 10, 2019) (same); *Galanis v. Szulik*, 863 F. Supp. 2d 123, 124 (D. Mass. 2012) (motions for reconsideration "are not vehicles for pressing arguments which could have been asserted earlier").  In any event, the court still has not been presented with compelling evidence holding that the facts of this case could not support a MCRA or IIED claim as a matter of law.[2]

---

[2] The defendant argues that the court erred by relying on an unpublished district court opinion, *Sanchez v. City of Boston*, Civ. A. No. 10-11075-RGS, 2011 WL 5508929 (D. Mass. Nov. 10, 2011), to find that a clearly established constitutional right to be free from threats of arrest and criminal charges defeated his qualified immunity.  *See* D. 45 ¶ 9 ("[i]n a qualified immunity analysis, . . .the *Sanchez* case does not support Plaintiff's MCRA claim"); ¶ 16 ("[m]oreover, [*Sanchez*] cannot defeat qualified immunity because the facts are not similar to the present case").  However, the court did not cite *Sanchez* in relation to qualified immunity, but rather for the proposition that threats of arrest and criminal charges to coerce one to take some action can potentially form the basis of a valid MCRA claim.  Floyd does not address this proposition in his motion.

## CONCLUSION

For the foregoing reasons, the defendant's Motion to Reconsider Order on Summary Judgment (D. 45) is DENIED.

### So Ordered.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.


DATED: September 13, 2021